## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| BRIDGET SHEPHERD, on behalf of herself and all others similarly situated,<br><br>      Plaintiffs,<br><br>  vs.<br><br>CANCER AND HEMATOLOGY CENTERS OF WESTERN MICHIGAN, P.C.,<br><br>      Defendant. | Case No. 1:22-cv-734 _____<br><br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Bridget Shepherd, individually and on behalf of all others similarly situated, by and through her attorneys, Finkelstein, Blankinship, Frei-Pearson & Garber, LLP and Keller Postman LLC, brings this action against Defendant Cancer and Hematology Centers of Western Michigan, P.C., and respectfully alleges, upon her own knowledge, or where she lacks personal knowledge, upon information and belief including the investigation of her counsel, as follows:

## INTRODUCTION

1.  Plaintiff brings this class action lawsuit on behalf of herself and all others similarly situated against Defendant Cancer and Hematology Centers of Western Michigan, P.C. ("Defendant") as a result of Defendant's failure to safeguard and protect the confidential information of Plaintiff and the other members of the Class—including names, social security numbers, bank information, "certain components of their health record[s]," and other protected health information as defined by the Health Insurance Portability and Accountability Act of 1996

1

("HIPAA"), additional personally identifiable information ("PII") and protected health information ("PHI") (collectively, their "Sensitive Information")—in Defendant's custody, control, and care.

2.      Plaintiff is a former patient of Defendant.  As a condition of receiving medical treatment from Defendant, Plaintiff was required to and did supply Sensitive Information to Defendant, including, but not limited to, her Social Security number, date of birth, financial information, health insurance information, and other personal private data.

3.      Unbeknownst to Plaintiff, Defendant did not have sufficient cybersecurity procedures and policies in place to safeguard the Sensitive Information it possessed.  As a result, cybercriminals gained access to—or "hacked"—Defendant's computer network, including Plaintiff's and proposed Class Members' Sensitive Information (the "Data Breach").  Plaintiff and members of the proposed Class suffered damages as a result of the unauthorized disclosure of their Sensitive Information in the Data Breach.

4.       The Data Breach was a direct result of Defendant's failure to implement adequate and reasonable cybersecurity protections and protocols that were necessary to protect the Sensitive Information of patients and employees who entrusted it into Defendant's custody and care.

5.      This lawsuit seeks to redress Defendant's unlawful disclosure of the Sensitive Information of all persons affected by the Data Breach.  Defendant's unlawful disclosure of this Sensitive Information to cybercriminals has caused actual harm to Plaintiff and proposed Class Members and placed them at an increased risk of identity theft, for which they must now undertake additional security measures to minimize.

6.      Plaintiff asserts causes of action in negligence, negligent misrepresentation, breach of express contract, breach of implied contract, breach of fiduciary duty, violation of the Michigan Identity Theft Protection Act, Mich. Compl. Laws § 445.72(1), and unjust enrichment.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2), because this is a class action in which the matter in controversy exceeds the sum of $5,000,000, the number of class members exceeds 100, and at least one Class member is a citizen of a state different from Defendant.

8.      This Court has personal jurisdiction over Defendant because Defendant purposefully directs or directed its actions toward Michigan, and is headquartered in Grand Rapids, Michigan.

9.      Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's and Class members' claims occurred in this District.

## PARTIES

10.     Plaintiff Bridget Shepherd is, and at all times mentioned herein was, an individual citizen of the State of Michigan, residing in Muskegon County.   Plaintiff was a patient of Defendant and had her Sensitive Information, including PHI and PII, compromised as a result of the Data Breach.

11.     Ms. Shepherd received notice in the form of a letter from Defendant informing her that PII and PHI including her name and "certain components of [her] health record" may have been stolen in a data breach and exposed to an unauthorized third party.  If Ms. Shepherd had known that Defendant would not adequately protect her PII and PHI, she would not have allowed

3

Defendant access to this sensitive and private information.

12.    Since the Data Breach, Plaintiff has received repeated spam and phishing attempting targeting her both financially and medically.  Each time this has happened, she has had to expend time keeping access to her information secure from these individual(s); since the Data Breach, Plaintiff has had to expend several hours engaging in these activities.

13.    Defendant is a domestic professional corporation, organized under the laws of the State of Michigan, with its principal place of business at 5800 Foremost Drive SE, Suite 300, Grand Rapids, Michigan 49546.

## THE RISK OF MEDICAL DATA BREACHES IS WELL KNOWN

14.    Defendant was well aware that its data would be stolen if it did not take adequate precautions.  Indeed, data breaches occur all too frequently and are well publicized.

15.    One of the primary methods of accomplishing a data hack is through malware defined by wikipedia.org as "any software intentionally designed to cause damage to a computer, server, client, or computer network.[1]  One leading financial journal estimated that upwards of one million malware threats are created *every day*.[2]

16.    Medical providers have been a primary target of hackers because of the rich cache of Sensitive Information which patients must disclose to their various medical providers.

17.    A comprehensive study undertaken by the JAMA Network found that data breaches exposing medical records increased from 199 hacks in 2010 to 344 hacks in 2017, with the

---

[1] https://en.wikipedia.org/wiki/Malware (last visited on December 21, 2021).

[2] https://money.cnn.com/2015/04/14/technology/security/cyber-attack-hacks-security/

corresponding number of compromised medical records increasing from 5.9 million to 176.3 million, respectively.[3]

18.    Another authoritative study in 2016 found that data breaches at healthcare organizations were on the increase; that the organizations thought they were more vulnerable to data breach than other organizations; yet these organizations were unprepared to address new threats.[4]  The study also found that healthcare organizations' biggest concern in cybersecurity was employee negligence, and that the majority of data breaches were caused by criminal acts.[5]

19.    Data breaches are more than just technical violations of their victims' rights.  By accessing a victim's personal information, the hacker can ransack the victim's life: withdraw funds from bank accounts, get new credit cards or loans in the victims' name, lock the victim out of his or her financial or social media accounts, send out fraudulent communications masquerading as the victim, file false tax returns, destroy their credit rating and more.[6]  A data hack can also result in the revelation of highly confidential and compromising information.[7]

20.    The United States Government Accountability Office noted in a June 2007 report on Data Breaches ("GAO Report") that identity thieves use identifying data such as Social Security

---

[3] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6233611/ (last visited December 21, 2021).

[4] https://www.ponemon.org/library/sixth-annual-benchmark-study-on-privacy-security-of-healthcare-data-1?q=library/sixth-annual-benchmark-study-on-privacy-security-of-healthcare-data-1, cited in New York State Bar Association Journal, May 2019, p.15

[5] https://www.ponemon.org/library/sixth-annual-benchmark-study-on-privacy-security-of-healthcare-data-1?q=library/sixth-annual-benchmark-study-on-privacy-security-of-healthcare-data-1, p. 3, 5

[6] *See* https://topclassactions.com/lawsuit-settlements/privacy/data-breach/875438-recent-data-breach/ (last visited December 21, 2021).

[7] *See, e.g.*, https://en.wikipedia.org/wiki/Ashley_Madison_data_breach (last visited December 21, 2021).

numbers to open financial accounts, receive government benefits and incur charges and credit in a person's name.[8]  As the GAO Report states, this type of identity theft is the most harmful because it often takes some time for the victim to become aware of the theft, and the theft can impact the victim's credit rating adversely.

21.    In addition, the GAO Report states that victims of identity theft will face "substantial costs and inconveniences repairing damage to their credit records" and their "good name."[9]

22.    Identity theft victims are frequently required to spend many hours and large amounts of money repairing the impact to their credit.  Identity thieves use stolen personal information for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud.

23.    There may be a time lag between when sensitive information is stolen and when it is used.  According to the GAO Report:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft.  Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[10]

24.    With access to an individual's Sensitive Information, cybercriminals can do more than just empty a victim's bank account—they can also commit all manner of fraud, including

---

[8] *See Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown* (June 2007), United States Government Accountability Office, *available at* <https://www.gao.gov/new.items/d07737.pdf> (last visited December 21, 2021).

[9] *Id.* at 2, 9.

[10] *Id.* at 29 (emphasis added).

obtaining a driver's license or official identification card in the victim's name but with the thief's picture; using the victim's name and Social Security number to obtain government benefits; or, filing a fraudulent tax return using the victim's information.  In addition, identity thieves may obtain a job using the victim's Social Security number, rent a house, or receive medical services in the victim's name, and may even give the victim's personal information to police during an arrest, resulting in an arrest warrant being issued in the victim's name.[11]

25.    Such personal information is such a valuable commodity to identity thieves that once the information has been compromised, criminals often trade the information on the "cyber black-market" for years.  As a result of recent large-scale data breaches, identity thieves and cybercriminals have openly posted stolen credit card numbers, Social Security numbers, and other personal information directly on various Internet websites making the information publicly available.

26.    A study by Experian found that the "average total cost" of medical identity theft is "about $20,000" per incident, and that a majority of victims of medical identity theft were forced to pay out-of-pocket costs for healthcare they did not receive in order to restore coverage.[12] Indeed, data breaches and identity theft have a crippling effect on individuals and detrimentally impact the entire economy as a whole.

27.    Medical databases are especially valuable to identity thieves. According to a 2012 Nationwide Insurance report, "[a] stolen medical identity has a $50 street value—whereas a stolen

---

[11] *See* Federal Trade Commission, *Warning Signs of Identity Theft*, *available at* https://www.identitytheft.gov/Warning-Signs-of-Identity-Theft (last visited December 21, 2021).

[12] *See* Elinor Mills, Study: Medical identity theft is costly for victims, CNET (Mar. 3, 2010), <https://www.cnet.com/news/study-medical-identity-theft-is-costly-for-victims/> (last visited December 21, 2021).

social security number, on the other hand, only sells for $1."[13]  In fact, the medical industry has experienced disproportionally higher instances of computer theft than any other industry.

## DEFENDANT ALLOWED CRIMINALS TO OBTAIN
## PLAINTIFF'S AND THE CLASS'S SENSITIVE INFORMATION

28.    Defendant's computer network was breached "in late December [2021],"[14] resulting in a criminal unlawfully obtaining patients' names, names, social security numbers, bank information, certain components of their health records, and other protected health information.

29.    On March 18, 2022, four months after the Data Breach, Defendant notified the U.S. Department of Health and Human Services of the incident, and that it impacted 43,071 individuals.[15]

30.    Despite having knowledge of the Data Breach since prior to December 2021, Defendant did not inform Plaintiff or the Class of the breach of its computer network for months, until late March 2022.[16]

31.    Because of Defendant's failure to protect their information, Plaintiff and Class Members will be at a heightened risk of identity theft for the rest of their lives.  Plaintiff has incurred (and will continue to incur) damages in the form of, inter alia, time spent dealing with

---

[13] Study: Few Aware of Medical Identity Theft Risk, Claims Journal, http://www.claimsjournal.com/news/national/2012/06/14/208510.htm (last visited December 21, 2021).

[14] Cancer & Hematology Centers of Western Michigan, P.C. Notifies Individuals of Data Security Incident Involving Personal information, available at https://web.archive.org/web/20220408230344/http://www.chcwm.com/wp-content/uploads/2022/03/25674955_5-CHCWM-WebNotification.pdf (last visited July 18, 2022)

[15] https://www.dataguidance.com/news/usa-cancer-hematology-centers-western-michigan-notifies

[16] https://healthitsecurity.com/news/health-plans-laboratories-health-departments-hit-by-healthcare-data-breaches

further attempts at compromising her data, loss of privacy, and costs of protecting her credit.  By this action, Plaintiff seeks to hold Defendant responsible for the harm caused by its negligence.

**DEFENDANT'S OBLIAGATIONS AND ITS NEGLIGENT FAILURE TO MEET THEM**

32.     Defendant had obligations created by HIPAA, promises made to patients like Plaintiff and other proposed Class Members, and based on industry standards, to keep the compromised Sensitive Information confidential and to protect it from unauthorized disclosures. Plaintiff and proposed Class Members provided their Sensitive Information to Defendant with the reasonable understanding that Defendant, its employees, and any business partners to whom Defendant disclosed or entrusted the Sensitive Information would comply with their obligations to keep such information confidential and secure from unauthorized disclosures.

33.     Furthermore, Plaintiff and proposed Class Members all entered into written agreements with Defendant as part of, and as a precondition to, the medical services Defendant provided to them or for employment with Defendant.  These agreements contained or incorporated representations that Defendant would protect proposed Class Members' Sensitive Information. The agreements involved a mutual exchange of consideration whereby Defendant provided medical services or employment for Class Members in exchange for payment or labor from Class Members and/or Class Members' insurance carriers or government programs remitting payment on Class Members' behalf. [17]

---

[17] On information and belief, Plaintiff received the same or materially equivalent representations in connection with her medical care through Defendant as the other Class Members who received the same or materially equivalent representations in connection with the medical care they received from Defendant or as a part of their employment.

34.    Defendant's representations to Plaintiff and proposed Class Members include that that it adheres to certain privacy practices (the "Privacy Policy"), which include that "It is our legal duty to maintain the privacy of your medical information that identifies you."[18]

35.    This policy enumerates specific limited circumstances for which Defendant will disclose Sensitive Information, including for purposes of treatment, arranging payment of hospital bills, as necessary for health care operations, business associates, to family members directly involved in the patient's care, to certain government agencies, or as required by court or administrative order.[19]

36.    None of these enumerated circumstances apply to Defendant's disclosure of Sensitive Information in the Data Breach.

37.    By negligently failing to adequately protect Plaintiff's and proposed Class Members' Sensitive Information, Defendant violated its obligations under HIPAA and its contractual obligations embodied in its Privacy Policy.

38.    Defendant's security failure demonstrates that it failed to honor its duties and promises by not:

   a.    Maintaining an adequate data security system to reduce the risk of data breaches and cyber-attacks;

   b.    Adequately protecting Plaintiff's and the proposed Class Members' Sensitive Information;

   c.    Ensuring the confidentiality and integrity of electronic protected health information they created, received, maintained, and/or transmitted, in violation of 45 C.F.R. § 164.306(a)(1);

---

[18] Cancer & Hematology Centers of Western Michigan, *HIPAA Notice of Privacy Practices*, https://www.chcwm.com/hipaa-notice-of-privacy-practices/ (last visited July 18, 2022).

[19] *Id.*

d.     Implementing technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights in violation of 45 C.F.R. § 164.312(a)(1);

e.     Implementing policies and procedures to prevent, detect, contain, and correct security violations in violation of 45 C.F.R. § 164.308(a)(1)(i);

f.     Implementing procedures to review records of information system activity regularly, such as audit logs, access reports, and security incident tracking reports in violation of 45 C.F.R. § 164.308(a)(1)(ii)(D);

g.     Protecting against any reasonably anticipated threats or hazards to the security or integrity of electronic protected health information in violation of 45 C.F.R. § 164.306(a)(2);

h.     Protecting against reasonably anticipated uses or disclosures of electronic protected health information that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 C.F.R. § 164.306(a)(3);

i.     Ensuring compliance with the HIPAA security standard rules by their workforces in violation of 45 C.F.R. § 164.306(a)(4); and/or

j.     Training all members of their workforces effectively on the policies and procedures with respect to protected health information as necessary and appropriate for the members of their workforces to carry out their functions and to maintain security of protected health information, in violation of 45 C.F.R. § 164.530(b).

39.     Plaintiff and all members of the proposed Class have consequently suffered harm by virtue of the compromise and exposure of their Sensitive Information—including, but not limited to, (i) an imminent risk of future identity theft; (ii) lost time and money expended to mitigate the threat of identity theft; (iii) diminished value of personal information; and (iv) a loss of privacy.  Plaintiff and proposed Class Members were also injured because they did not receive the full value of the services for which they bargained, to wit, medical care plus adequate data security.  Plaintiff and all members of the proposed Class are and will continue to be at imminent risk for tax fraud and identify theft and their attendant dangers for the rest of their lives because

their dates of birth, Social Security numbers, medical information, and related personal information are in the hands of cyber-criminals.

## CLASS ACTION ALLEGATIONS

40.     Pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), Plaintiff brings this action against Defendant as a class action on behalf of herself and all members of the following class of similarly situated persons:

> All persons whose Sensitive Information, provided to Defendant as part of their obtaining medical treatment or employment, was exposed to unauthorized access by way of the data breach of Defendant's computer network on or about December 2021.

41.     Plaintiff reserves the right to amend the above definition(s), or to propose other or additional classes, in subsequent pleadings and/or motions for class certification.

42.     Excluded from the Class are Defendant; any parent, subsidiary, or affiliate of Defendant; any entity in which Defendant have or had a controlling interest, or which Defendant otherwise controls or controlled; and any legal representative, predecessor, successor, or assignee of Defendant.

43.     This action satisfies the requirements for a class action under Fed. R. Civ. P. 23(a), including requirements of numerosity, commonality, typicality, and adequacy of representation.

44.     <u>Numerosity:</u> This action satisfies the numerosity requirement for a class action. Plaintiff believes that the proposed Class as described above consists of approximately 43,071 individuals though the exact number and identities of Class Members are currently unknown.  The Class is therefore so numerous that joinder of all members, whether otherwise required or permitted, is impracticable.

45.     <u>Existence and Predominance of Common Questions of Law and Fact:</u> This action satisfies the commonality requirement for a class action.  Common questions of fact and law exist

for each cause of action and predominate over questions affecting only individual Class Members.

Common questions include, but are not limited to, the following:

a. Whether Defendant's data security systems prior to the Data Breach met the requirements of laws including, for instance, HIPAA;

b. Whether Defendant's data security systems prior to the Data Breach met industry standards;

c. Whether and to what extent Defendant had a duty to protect Class Members' Sensitive Information;

d. Whether Defendant breached its duty to protect Class Members' Sensitive Information;

e. Whether Defendant disclosed Class Members' Sensitive Information in the Data Breach;

f. Whether Defendant's conduct was negligent;

g. Whether Plaintiff and Class Members are entitled to damages as a result of Defendant's conduct; and

h. Whether Defendant's disclosure intruded upon the privacy of Plaintiff and Class Members.

46. <u>Typicality</u>: This action satisfies the typicality requirement for a class action.  The claims asserted by Plaintiff are typical of the claims of the members of the Class she seeks to represent because, among other things, Plaintiff and Class Members sustained similar injuries as a result of Defendant's uniform wrongful conduct; Defendant owed the same duty to each class member; and Class Members' legal claims arise from the same conduct by Defendant.

47. <u>Adequacy</u>: This action satisfies the adequacy requirement for a class action. Plaintiff will fairly and adequately represent and protect the interests of the Class.  Plaintiff has no interests conflicting with the interests of Class Members.  Plaintiff's Counsel are competent and experienced in data breach class action litigation.

48.     This action satisfies the requirements for a class action under Fed. R. Civ. P. 23(b)(2); Defendant has acted, or refused to act, on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or equitable relief with respect to the Class as a whole.

49.     This action satisfies the requirements for a class action under Fed. R. Civ. P. 23(b)(3); in addition to the predominance of common issues of law and fact described, *supra*, a class action is superior to other available methods for the fair and efficient adjudication of this controversy because Class Members number in the thousands and individual joinder is impracticable.  Trial of Plaintiff's and Class Members' claims is manageable, and unless the Class is certified, Defendant will remain free to continue to engage in the wrongful conduct alleged herein without consequence.

50.     The prosecution of separate actions by individual Class Members would create a risk of establishing incompatible standards of conduct for Defendant.

51.     Defendant's wrongful actions, inactions, and omissions are generally applicable to the Class as a whole and, therefore, Plaintiff also seeks equitable remedies for the Class.

52.     Defendant's systemic policies and practices also make injunctive relief for the Class appropriate.

53.     Absent a class action, Defendant will retain the benefits of its wrongdoing despite its serious violations of the law and infliction of economic damages, injury, and harm on Plaintiff and Class Members.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION
### (Negligence)

54.    Plaintiff re-alleges and incorporates by reference all preceding factual allegations as though fully set forth herein.

55.    Defendant owed a duty to Plaintiff and to the proposed Class to exercise reasonable care in obtaining, securing, safeguarding, properly disposing of, and protecting Plaintiff's and proposed Class Members' Sensitive Information within its control from being compromised by or being accessed by unauthorized third parties.  This duty included, among other things, maintaining adequate control over its computer systems and network so as to prevent unauthorized access thereof.

56.    Defendant owed a duty of care to the Plaintiff and members of the proposed Class to provide security, consistent with industry standards, to ensure that its computer network adequately protected the Sensitive Information of the patients in its facilities and networks.

57.    Defendant's duty of care to use reasonable security measures arose as a result of the special relationship that existed between it and its patients, which is recognized by laws including, but not limited to, HIPAA.  Only Defendant was in a position to ensure that its computer network was sufficient to protect against the harm to Plaintiff and the members of the proposed Class from a data breach.

58.    Defendant's duty to use reasonable security measures also arose under HIPAA, pursuant to which Defendant is required to "reasonably protect" confidential data from "any intentional or unintentional use or disclosure" and to "have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information."   45

C.F.R. § 164.530(c)(1).  The confidential data at issue in this case includes "protected health information" within the meaning of HIPAA.

59.    In addition, Defendant had a duty to use reasonable security measures under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

60.    Defendant's duty to use reasonable care in protecting the Sensitive Information arose not only as a result of the common law and the statutes and regulations described above, but also because they are bound by, and have committed to comply with, industry standards for the protection of confidential information.

61.    Defendant breached its common law, statutory, and other duties—and thus, was negligent—by failing to use reasonable measures to protect patients' Sensitive Information, and by failing to provide timely notice of the Data Breach.  The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

a.    failing to adopt, implement, and maintain adequate security measures to safeguard Plaintiff's and the proposed Class Members' Sensitive Information;

b.    failing to adequately monitor the security of its networks and systems;

c.    allowing unauthorized access to Plaintiff's and the proposed Class Members' Sensitive Information; and

d.    failing to warn Plaintiff and other proposed Class Members about the Data Breach in a timely manner so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

62.    Defendant owed a duty of care to the Plaintiff and the members of the proposed Class because they were foreseeable and probable victims of any inadequate security practices.

63.    It was foreseeable that Defendant's failure to use reasonable measures to protect Sensitive Information and to provide timely notice of the Data Breach would result in injury to Plaintiff and other proposed Class Members.  Further, the breach of security, unauthorized access, and resulting injury to Plaintiff and the members of the proposed Class were reasonably foreseeable.

64.    It was therefore foreseeable that the failure to adequately safeguard Sensitive Information would result in one or more of the following injuries to Plaintiff and the members of the proposed Class: ongoing, imminent, certainly impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; loss of the confidentiality of the stolen confidential data; the illegal sale of the compromised data on the deep web black market; expenses and/or time spent on credit monitoring and identity theft insurance; time spent scrutinizing bank statements, credit card statements, and credit reports; expenses and/or time spent initiating fraud alerts; decreased credit scores and ratings; lost work time; and other economic and non-economic harm.

65.    Defendant knew or reasonably should have known of the inherent risks in collecting and storing the Sensitive Information of Plaintiff and members of the proposed Class and the critical importance of providing adequate security of that information, yet despite the foregoing had inadequate cybersecurity systems and protocols in place to secure the Sensitive Information.

66.    As a result of the foregoing, the Defendant unlawfully breached its duty to use reasonable care to protect and secure the Sensitive Information of Plaintiff and the proposed Class which Plaintiff and members of the proposed Class were required to provide to Defendant as a condition to obtaining medical care through Defendant's providers.

67.     Plaintiff and members of the proposed Class reasonably relied on the Defendant to safeguard their information. and while Defendant was in a position to protect against harm from a data breach, Defendant negligently and carelessly squandered that opportunity.  As a proximate result, Plaintiff and members of the proposed Class suffered and continue to suffer the consequences of the Data Breach.

68.     Defendant's negligence was the proximate cause of harm to Plaintiff and members of the proposed Class.

69.     Had Defendant not failed to implement and maintain adequate security measures to protect the Sensitive Information of its patients, the Plaintiff's and proposed Class Members' Sensitive Information would not have been exposed to unauthorized access and stolen and they would not have suffered any harm.

70.     However, as a direct and proximate result of Defendant's negligence, Plaintiff and members of the proposed Class have been seriously and permanently damaged by the Data Breach. Specifically, Plaintiff and members of the proposed Class have been injured by, among other things; (1) the loss of the opportunity to control how their Sensitive Information is used; (2) diminution of value and the use of their Sensitive Information; (3) compromise, publication and/or theft of the Plaintiff's and the proposed Class Members' Sensitive Information; (4) out-of-pocket costs associated with the prevention, detection and recovery from identity theft and/or unauthorized use of financial and medical accounts; (5) lost opportunity costs associated with their efforts expended and the loss of productivity from addressing as well as attempting to mitigate the actual and future consequences of the breach including, but not limited to, efforts spent researching how to prevent, detect, and recover from identity and healthcare/medical data misuse; (6) costs associated with the ability to use credit and assets frozen or flagged due to credit misuse, including

complete credit denial and/or increased cost of the use, the use of credit, credit scores, credit reports, and assets; (7) unauthorized use of compromised Sensitive Information to open new financial and/or healthcare and/or medical accounts; (8) tax fraud and/or other unauthorized charges to financial, healthcare or medical accounts and associated lack of access to funds while proper information is confirmed and corrected and/or imminent risk of the foregoing; (9) continued risks to their Sensitive Information, which remains in the Defendant's possession and may be subject to further breaches so long as Defendant fails to undertake appropriate and adequate measures to protect the Sensitive Information in its possession; and (10) future costs in terms of time, effort and money that will be spent trying to prevent, detect, contest and repair the effects of the Sensitive Information compromised as a result of the data breach as a remainder of the Plaintiff's and proposed Class Members' lives.

71.    Accordingly, Plaintiff, individually and on behalf of the Class, respectfully requests this Court award all relevant damages.

## SECOND CAUSE OF ACTION
### (Negligent Misrepresentation)

72.    Plaintiff re-alleges and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

73.    Through its Privacy Policy and other actions and representations, Defendant held itself out to Plaintiff and the proposed Class as possessing and maintaining adequate data security measures and systems that were sufficient to protect the PII belonging to Plaintiff and the proposed Class.

74.    Defendant knew or should have known that it was not in compliance with the representations made in its Privacy Policy.

75.    Defendant knowingly and deliberately failed to disclose material weaknesses in its data security systems and procedures that good faith and common decency required it to disclose to Plaintiff and the Class.

76.    Neither Plaintiff nor the proposed Class Members could have known or discovered the material weaknesses in Defendant's data security practices.

77.    A reasonable business would have disclosed information concerning material weaknesses in its data security measures and systems to Plaintiff and the proposed Class.

78.    Defendant also failed to exercise reasonable care when it failed to timely communicate information concerning the data breach that it knew, or should have known, compromised Sensitive Information of Plaintiff and the proposed Class.

79.    Plaintiff and members of the proposed Class relied on Defendant's representations, or lack thereof, when they provided their Sensitive Information to Defendant.

80.    As a direct and proximate result of Defendant's negligent misrepresentations by omission, Plaintiff and all members of the proposed Class have suffered injury, have been damaged as described herein, and are entitled to damages in an amount to be proven at trial.

### THIRD CAUSE OF ACTION
**(Breach of Express Contract)**

81.    Plaintiff re-alleges and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

82.    Plaintiff and proposed Class Members entered into written agreements with Defendant as part of, and as a precondition to, the medical services Defendant provided to proposed Class Members.  These agreements contained or incorporated representations that Defendant would protect proposed Class Members' Sensitive Information and, on information and belief, include or incorporate Defendant's Privacy Policy.  The agreements involved a mutual

exchange of consideration whereby Defendant provided medical services for proposed Class Members in exchange for payment from proposed Class Members and/or proposed Class Members' insurance carriers or government programs remitting payment on proposed Class Members' behalf.

83.     Defendant's failure to protect proposed Class Members' Sensitive Information constitutes a material breach of the terms of the agreement by Defendant as reflected, *inter alia*, in its Privacy Policy.

84.     As a direct and proximate result of Defendant's breach of contract with Plaintiff and proposed Class Members, Plaintiff and proposed Class Members have been irreparably harmed.

85.     Accordingly, Plaintiff, individually and on behalf of the Class, respectfully requests this Court award all relevant damages.

## FOURTH CAUSE OF ACTION
### (Breach of Implied Contract)

86.     Plaintiff re-alleges and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

87.     Plaintiff and members of the proposed Class provided Sensitive Information to the Defendant in connection with their obtaining needed medical treatments from Defendant's providers and were required to provide their Sensitive Information as a condition of receiving medical treatment therefrom.

88.     Defendant would not have provided treatment to Plaintiff, nor to any members of the proposed Class had Plaintiff and members of the proposed Class not provided various forms of Sensitive Information to Defendant—names, addresses, phone numbers, dates of birth, Social Security numbers, health insurance information, health insurance identification number and

carrier, dates of service, diagnosis, treatment related information, and other protected health information, and other privileged and confidential items of information.

89.     Plaintiff and members of the proposed Class had no alternative and did not have any bargaining power with regards to providing their Sensitive Information.  The Defendant required disclosure of Sensitive Information as a condition to rendering medical treatment, which the Plaintiff and members of the proposed Class did.

90.     When Plaintiff and proposed Class Members paid money and provided their Sensitive Information to Defendant in exchange for services, they entered into implied contracts with Defendant pursuant to which Defendant agreed to safeguard and protect such information and to timely and accurately notify them if their data had been breached and compromised.

91.     Defendant solicited and invited prospective clients and other consumers to provide their Sensitive Information as part of its regular business practices.  These individuals accepted Defendant's offers and provided their Sensitive Information to Defendant.  In entering into such implied contracts, Plaintiff and the proposed Class assumed that Defendant's data security practices and policies were reasonable and consistent with industry standards, and that Defendant would use part of the funds received from Plaintiff and the proposed Class to pay for adequate and reasonable data security practices.

92.     Plaintiff and the proposed Class would not have provided and entrusted their Sensitive Information to Defendant in the absence of the implied contract between them and Defendant to keep the information secure.

93.     Plaintiff and the Class fully performed their obligations under the implied contracts with Defendant.

94.     Defendant breached its implied contracts with Plaintiff and the proposed Class by failing to safeguard and protect their Sensitive Information and by failing to provide timely and accurate notice that their personal information was compromised as a result of a data breach.

95.     As a direct and proximate result of Defendant's breaches of their implied contracts, Plaintiff and the proposed Class sustained actual losses and damages as described herein.

96.     Accordingly, Plaintiff, individually and on behalf of the Class, respectfully requests this Court award all relevant damages.

### FIFTH CAUSE OF ACTION
**(Breach of Fiduciary Duty)**

97.     Plaintiff re-alleges and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

98.     The Defendant collected Sensitive Information from Plaintiff and members of the proposed Class as part of the physician-patient relationship.

99.     The relationship between the Defendant and Plaintiff and members of the proposed Class thus was a fiduciary relationship.

100.    Plaintiff and members of the proposed Class contend that this fiduciary relationship included a fiduciary duty to safeguard the Sensitive Information which Defendant insisted—as a condition of medical treatment—that Plaintiff and members of the proposed Class provide to the Defendant.  This duty required Defendant to ensure that the interests of Plaintiff and members of the proposed Class would be adequately protected both before and after the Data Breach.

101.    As a result of Defendant's breach of its fiduciary duties, Plaintiff and the members of the proposed Class have suffered actual damages and prospective damages which are likely to arise.

102.    Accordingly, Plaintiff, individually and on behalf of the Class, respectfully requests this Court award all relevant damages.

### SIXTH CAUSE OF ACTION
### (Violation of the Michigan Identity Theft Protection Act)

103.    Plaintiff re-alleges and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

104.    Defendant is a business that owns or licenses computerized data that includes "personal information" as defined by Mich. Comp. Laws § 445.72(1).

105.    Plaintiff's and the proposed Class Members' Sensitive Information includes personal information as covered under Mich. Comp. Laws § 445.72(1).

106.    Defendant was required to accurately notify Plaintiff and the proposed Class if it discovered a security breach, or received notice of a security breach without unreasonable delay. Mich. Comp. Laws § 445.72(1).

107.    Defendant was required to provide notice that was written in a "clear and conspicuous manner." Mich. Comp. Laws § 445.72(6).

108.    Because Defendant discovered a security breach and had notice of a security breach involving the Sensitive information of Plaintiff and the proposed Class Members, Defendant had an obligation to disclose the data breach in a timely and accurate fashion as mandated by Mich. Comp. Laws § 445.72(4).

109.    By failing to disclose the data breach in a timely and accurate manner and provide notice clearly and conspicuously, Defendant violated Mich. Comp. Laws § 445.72(4).

110.    As a direct and proximate result of Defendant's violations of Mich. Comp. Laws § 445.72(4), Plaintiff and the proposed Class Members suffered damages, as described herein. Plaintiff and the Class seek relief under Mich. Comp. Laws § 445.72(13), including a civil fine.

## SEVENTH CAUSE OF ACTION
### (Unjust Enrichment)

111.    Plaintiff re-alleges and incorporates by reference all preceding factual allegations as though fully set forth herein.

112.    Defendant benefitted from receiving Plaintiff's and proposed Class Members' Sensitive Information by its ability to retain and use that information for its own benefit.

113.    Defendant understood and appreciated that Plaintiff's and proposed Class Members' Sensitive Information was private and confidential, and its value depended upon Defendant maintaining the privacy and confidentiality of that Sensitive Information.

114.    Plaintiff and proposed Class Members conferred a monetary benefit upon Defendant in the form of monies paid for services available from Defendant, or for labor provided to Defendant.

115.    Defendant had knowledge of the benefits conferred upon it by Plaintiff and proposed Class Members.

116.    Defendant benefitted from receipt of Plaintiff and proposed Class Members' Sensitive Information, as Defendant used it to facilitate the transfer of Sensitive Information between parties.

117.    Monies paid to Defendant by Plaintiff and proposed Class Members were to be used, in part, to pay for the costs of reasonable and adequate data privacy and security measures; similarly, wages provided to employees were understood to be at a discount in order to allow for the maintenance of adequate data security.

118.    But for Defendant's willingness and commitment to maintain privacy and confidentiality, Plaintiff and proposed Class Members' Sensitive Information would not have been transferred to and entrusted with Defendant.

119.    As a result of Defendant's wrongful conduct, Defendant was unjustly enriched at the expense of, and to the detriment of, Plaintiff and proposed Class Members.

120.    Defendant's unjust enrichment resulted directly and proximately from the conduct alleged in this Complaint, including retaining, compiling, and using Plaintiff and proposed Class Members' Sensitive Information.

121.    Under the principals of equity and good conscience, Defendant should not be permitted to retain the money belonging to Plaintiff and proposed Class Members, which should have been used to purchase adequate security, because Defendant failed to implement adequate security practices and procedures.

122.    Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiff and proposed Class Members all unlawful or inequitable proceeds they received as a result of the conduct alleged herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and the Class, respectfully requests that the Court grant relief against Defendant as follows:

A.    For an Order certifying that this action may be prosecuted as a class action pursuant to Rule 23 of the Federal Rules of Civil, and requiring notice thereto to be paid by Defendant;

B.    Appointing Plaintiff and her counsel to represent the Class;

C.    For appropriate injunctive relief and/or declaratory relief, including an Order requiring Defendant to immediately secure and fully encrypt all confidential information, to properly secure computers containing confidential information, to

cease negligently storing, handling, and securing its consumers' confidential

information, and to provide identity theft monitoring for an additional five years;

D.      Adjudging and decreeing that Defendant has engaged in the conduct alleged

herein;

E.      For compensatory and general damages according to proof on certain causes of

action;

F.      For reimbursement, restitution, and disgorgement on certain causes of action;

G.      For both pre- and post-judgment interest at the maximum allowable rate on any

amounts awarded;

H.      For costs of the proceedings herein;

I.      For an Order awarding Plaintiff and the Class reasonable attorney's fees and

expenses for the costs of this suit;

J.      Trial by jury; and

K.      For any and all such other and further relief that this Court may deem just and

proper, including but not limited to punitive or exemplary damages.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff individually and on behalf of the Class, demands a trial by jury of all claims in

this Complaint so triable.

Dated: August 11, 2022

Respectfully submitted,


By:     */s/ Seth A. Meyer*

Seth A. Meyer (MI Bar No. P83182)
Alex J. Dravillas (*pro hac vice* forthcoming)
**KELLER POSTMAN LLC**
150 N. Riverside, Suite 4100
Chicago, Illinois 60606

Tel.: (312) 741-5220
sam@kellerpostman.com
ajd@kellerpostman.com

Todd S. Garber (*pro hac vice* forthcoming)
Andrew C. White (*pro hac vice* forthcoming)
**FINKELSTEIN, BLANKINSHIP,**
**FREI-PEARSON & GARBER, LLP**
One North Broadway, Suite 900
White Plains, New York 10601
Tel.: (914) 298-3281
tgarber@fbfglaw.com
awhite@fbfglaw.com

*Attorneys for Plaintiff and the Proposed Class*